UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERROD D. PIGEE,

Plaintiff,

Case No. 2:25-cv-10413

v.

Honorable Susan K. DeClercq
United States District Judge

JPMORGAN CHASE BANK, N.A.,

Defendant.
_________________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR SANCTIONS (ECF No. 3) AND DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S RESPONSE (ECF No. 5)**

Plaintiff Sherrod D. Pigee sued Defendant J.P. Morgan Chase Bank, N.A. ("Chase") for allegedly misreporting two monthly credit-card payments as delinquent to the three major credit-reporting bureaus, thus negatively impacting his credit score. Pigee seeks to recover for breach of contract (Count I), unjust enrichment (Count II), violations of the Michigan Consumer Protection Act ("MCPA") (Count III), violations of the Fair Credit Reporting Act ("FCRA") (Count IV), and negligent infliction of emotional distress ("NIED") (Count V). Chase now moves to dismiss Pigee's complaint, arguing that all five counts fail as a matter of law. In the same motion, Chase also requests sanctions against Pigee. As explained below, Pigee's complaint fails to state any valid claim for relief, so it will be

dismissed. But sanctions are not appropriate in this matter, so Chase's request on that ground will be denied.

## I. BACKGROUND

The following factual allegations come from Pigee's complaint. ECF No. 1-2. At the motion-to-dismiss stage, the court accepts them as true and draws all reasonable inferences in Pigee's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Pigee applied for a Chase Freedom credit-card account.[1] ECF No. 1-2 at PageID.9. His application was accepted, and so Pigee entered into a Card Member Agreement ("CMA") with Chase. *Id.* Pigee then used the credit card "to make various purchases within his authorized credit limit." *Id*. But around July 31, 2024, Chase closed Pigee's credit-card account "without valid cause and proper notice." *Id.* at PageID.10. Pigee contends that Chase closed his account due to purported late payments and payments returned unpaid (i.e., "bounced"). *Id.* Chase then reported Pigee's credit-card account as delinquent to the three major credit-reporting agencies ("CRAs"): Equifax, Experian, and TransUnion. *Id.*

Pigee, however, disagreed that he made any late or bounced payments. *Id.* Pigee also obtained his own credit reports and noticed that his credit score decreased

---

[1] Pigee does not allege when he applied for this account, nor how long he used the credit card before the events of July 31, 2024. *See* ECF No. 1-2.

because of the late payments reported by Chase. *Id* at PageID.11. Thus, to resolve the issue, Pigee states he "reported these findings to Chase Bank," but Chase did not change its reporting of the late payments and "failed or refused to contact the consumer credit bureaus as requested." *Id.* As a result, Pigee claims that he lost access to "conventional financing at competitive rates" with other lending services. *Id.* at PageID.10.

Accordingly, Pigee brings five claims for relief against Chase: (1) breach of contract; (2) unjust enrichment; (3) violation of the MCPA; (4) violation of the FCRA; and (5) negligent infliction of emotional distress. *Id.* at PageID.12–17.

**B. Procedural History**

On February 6, 2025, Pigee sued Chase in state court. ECF No. 1-2. Chase then timely removed, invoking this Court's federal-question jurisdiction over the FCRA claim and supplemental jurisdiction over the state-law claims. ECF No. 1 at PageID.2–3. After removal, Chase moved to dismiss under Civil Rule 12(b)(6), arguing that Pigee failed to state any claim for relief. ECF No. 3. More than a month later, after his deadline to do so had passed, Pigee responded. ECF No. 4. Chase thus moved to strike Pigee's response as untimely.[2] ECF No. 5. Now, both the motion to

---

[2] Given this Court's strong preference for deciding matters on the merits, *see Mann v. Mohr*, 802 F. App'x 871, 877 (6th Cir. 2020), and because considering Pigee's response will not change the outcome here (i.e., that Chase's motion to dismiss will be granted), Chase's motion to strike, ECF No. 5, will be denied.

dismiss and the motion to strike have been fully briefed. ECF Nos. 7; 8; 9. A hearing is not necessary to resolve the motions. *See* E.D. Mich. LR 7.1(f)(2).

## II. MOTION TO DISMISS

### A. Legal Standard

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439. The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

When a plaintiff proceeds *pro se*, his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

106 (1976)). Nevertheless, *pro se* plaintiffs must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B. Analysis**

*1. Count I – Breach of Contract*

To recover for breach of contract under Michigan law, "a plaintiff must allege: (1) the existence of a contract; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach caused the plaintiff's injury." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 953 (6th Cir. 2014).

Here, the parties agree that a valid contract—the Card Member Agreement ("CMA")—existed between them. *See* ECF Nos. 1-2; 3. And neither party appears to dispute the CMA's terms. *See generally id.* Rather, Pigee argues that Chase breached the CMA by (1) "misreporting a past due/late payment notice concerning Plaintiff to the consumer credit bureaus" and (2) "closing Plaintiff's account without cause." ECF No. 1-2 at PageID.12.

Pigee's first theory of breach, based on Chase allegedly misreporting information to CRAs, is preempted by the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681t(b)(1)(F). It is well established that the "FCRA preempts claims that 'arise from [a party's] reporting obligations as a furnisher of consumer credit information.'" *Goss v. CitiMortgage, Inc.*, No. 23-cv-13306, 2025 WL 87701, at *5 (E.D. Mich. Jan. 13, 2025) (quoting *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522

(6th Cir. 2019)). And "the plain language of § 1681t(b)(1)(F) preempts all state 'laws' without distinguishing between state statutory law and state common law." *Scott v. First S. Nat'l Bank*, 936 F.3d at 521. Thus, because Pigee's claim is a state common-law claim arising from Chase's reporting obligations, it is preempted by the FCRA.

Further, Pigee's second theory of breach, based on Chase closing his account, has no basis in the contract's terms. Nothing in the CMA's terms guarantees Pigee an account.[3] In fact, the CMA states, "[w]e are not obligated to honor every transaction, and we may close or suspend your account. Sometimes we close accounts based not on your actions or inactions, but on our business needs." ECF No. 3-5 at PageID.108. On the same page, it states, "[i]f your account is in default, we may close it without notice and require you to pay your unpaid balance immediately." *Id.* An account goes into default if a customer fails to submit a minimum payment or otherwise fails to comply with the CMA or other agreements with Chase. *Id.* In other words, if Pigee made bounced payments, putting his account into default, Chase would have the right to close it without notice. But even if Pigee

---

[3] Notably, Plaintiff does not point to any specific terms of the contract to demonstrate that Chase's conduct constitutes breach. And it is not for the Court to examine the entire CMA "to determine whether some unidentified term has been breached in the manner alleged." *Anagonyebentley v. Vill. Cap. & Inv., LLC*, No. 20-cv-10713, 2022 WL 193015, at *6 (E.D. Mich. Jan. 19, 2022).

did not make bounced payments, Chase could have still closed the account according to its business needs. In this way, the CMA's terms gave Chase the right to close Pigee's account, even without proper notice or cause. Thus, as a matter of law, the account's closure does not count as a breach.

*2. Count II – Unjust Enrichment*

Michigan law defines unjust enrichment as "the unjust retention of money or benefits which in justice and equity belong to another." *Hall v. Meisner*, 565 F. Supp. 3d 953, 977 (E.D. Mich. 2021) (quoting *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010)). To recover for unjust enrichment, a plaintiff must establish "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Id.* (quoting *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. 2003)). In these situations, the law implies a contract to prevent defendants from unfairly reaping benefits. *Id.* However, "[t]here cannot be an express and implied contract covering the same subject matter at the same time." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 722 (E.D. Mich. 2005).

Here, both parties agree that the CMA is an express, enforceable contract. *See* ECF Nos. 1-2 at PageID.11; 3 at PageID.51. This express contract precludes any finding of an implied contract under an unjust-enrichment theory, meaning Pigee's

claim fails.[4] *See Burton*, 373 F. Supp. 2d at 722 ("[U]njust enrichment is not a viable claim if an express contract governs."); *see also Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F. 3d 174, 180 (6th Cir. 1996) (recognizing that under Michigan law, "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for . . . unjust enrichment").

*3. Count III – Violations of the MCPA*

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." MICH. COMP. LAWS § 445.903. Pigee alleges that Chase violated the MCPA by engaging in "trade or commerce" and deceptively misreporting information to CRAs. ECF No. 1-2 at PageID.13–14. However, the MCPA does not cover "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. LAWS § 445.904(1)(a). The Michigan Supreme Court interpreted this exception broadly, holding that "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799 (E.D. Mich.

[4] Pigee makes much of the fact that he alleges unjust enrichment only as an alternative theory, brought in case his breach-of-contract claim fails. ECF No. 4 at PageID.11. But again, because Pigee concedes that there is an express contract here, his unjust-enrichment theory, even if alleged only in the alternative, necessarily fails. *See Burton*, 373 F. Supp. 2d at 722.

2019) (quoting *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007)).

Here, the exception applies. Pigee alleges that Chase violated the MCPA by "misrepresenting lease payment and account balance information to the consumer credit bureaus." ECF No. 1-2 at PageID.13–14. As explained below in Part III.B.4, the FCRA regulates how entities like Chase furnish information to CRAs. 15 U.S.C. § 1681s-2. And the FCRA is administered by the Federal Trade Commission and other federal banking agencies. *See* 15 U.S.C. § 1681s. Thus, the furnishing of information to CRAs is "specifically authorized by law." *Matanky*, 370 F. Supp. 3d at 799. Accordingly, the alleged misconduct falls directly within the MCPA exception. *See Wilson v. First Premier Bank*, No. 19-cv-11704, 2020 WL 2393199, at *6 (E.D. Mich. Feb. 29, 2020) (finding that the MCPA does not apply to transactions governed by the FCRA). Therefore, the disputed conduct here is exempt from the MCPA, and Pigee's MCPA claim must be dismissed.

*4. Count IV: Violations of the FCRA*

The FCRA imposes two duties onto entities that, like Chase, furnish information to CRAs. First, furnishers have an initial duty to report accurate information about consumers to the CRAs. 15 U.S.C. § 1681s-2(a). Second, if notified of a dispute filed over their reported information, furnishers face five statutory obligations, including reinvestigating, modifying, or deleting their reports. 15 U.S.C. § 1681s-2(b). However, the Sixth Circuit "has repeatedly held that

consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s–2(b)." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (collecting cases). Indeed, "consumers may step in to enforce their rights *only after* a furnisher has received proper notice of a dispute from a CRA." *Id.* (emphasis added).

Importantly, the FCRA creates a private right of action only under § 1681s-2(b), not under subsection (a). *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir. 2012). This statutory framework protects consumers from furnisher misconduct, but "simultaneously protects furnishers from answering frivolous consumer disputes." *Id.*

Other courts have dismissed FCRA claims when the plaintiff did not file a dispute with a CRA first. *See, e.g.*, *Goss v. CitiMortgage, Inc.*, No. 23-cv-13306, 2025 WL 87701, at *5–6 (E.D. Mich. Jan. 13, 2025) (dismissing a FCRA claim under § 1681s-2(b) when plaintiff failed to file a dispute with CRA); *see also Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 625 (D. Md. 2016) (holding plaintiff's FCRA claim "failed to allege a plausible claim for relief" because it was not preceded by a dispute filed to a CRA). Thus, courts may dismiss FCRA claims under § 1681s-2(b) if plaintiffs do not allege filing a dispute to a CRA before commencing the action.

Here, Pigee has failed to allege that he filed a dispute with a CRA about the

information supposedly misreported by Chase. ECF No. 1-2. Pigee responds that he "properly disputed the reports of Chase Bank, requesting that Defendant bank verify and delete the erroneous information from his credit file and notify the consumer credit reporting bureaus accordingly." ECF No. 4 at PageID.415. But critically, Pigee brought his concerns to the wrong party. Under § 1681s-2(b), Pigee should have filed a dispute with a CRA—not Chase. The CRA would then notify Chase and trigger Chase's duty to reinvestigate or modify the reported information under § 1681s-2(b). Pigee's failure to do so means that Chase's duty to reinvestigate was never triggered. *See Scott v. First S. Nat'l Bank*, 936 F.3d at 517.

For these reasons, even when taking all of Pigee's allegations as true, he has failed to state a valid FCRA claim. That will remain true unless and until Pigee first files a dispute with a CRA. Accordingly, Pigee's FCRA claim must be dismissed without prejudice.

*5. Count V – Negligent Infliction of Emotional Distress ("NIED")*

Under Michigan law, an NIED claim requires: "(1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not

presence, at least shock 'fairly contemporaneous' with the accident." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 869–70. (E.D. Mich. 2019) (quoting *Hesse v. Ashland Oil, Inc.,* 642 N.W.2d 330, 337 (Mich. 2002) (Kelly, J., dissenting)).

Furthermore, an NIED claim cannot be "predicated simply upon some negligent action that causes the plaintiff to suffer severe emotional distress." *Urbanec v. Multi-Fin. Sec. Corp.*, No. 10-cv-12869, 2010 WL 4739441, at *8 (E.D. Mich. Nov. 16, 2010) (quoting *Estate of Bandemer v. Bandemer*, No. 293033, 2010 WL 3984653, at *4 (Mich. Ct. App. Oct. 12, 2010)). Instead, it must be "predicated upon the plaintiff's witnessing negligent injury to an immediate [] family member and suffering severe mental distress resulting in actual physical harm." *Id.* (quoting *Bandemer*, 2010 WL 3984653, at *4).

Here, Pigee claims he has suffered emotional distress as a result of Chase's actions. *See* ECF No. 1-2 at PageID.17. He does not allege that he witnessed negligent injury to a third person. Therefore, Pigee's NIED claim fails. *See Urbanec*, 2010 WL 4739441, at *8.

In sum, Pigee has failed to state any claim upon which relief may be granted. His complaint must therefore be dismissed in its entirety.

## III. CHASE'S REQUEST FOR SANCTIONS

Chase has also requested sanctions against Pigee, asking that this Court "bar Plaintiff from filing any additional actions against Chase and/or any of its affiliates."

ECF No. 3 at PageID.65. For the reasons below, this Court will deny the request.

**A. Legal Standard**

This Court "possesses the discretion to enjoin Plaintiff from filing lawsuits without leave of the court." *Scott v. Burress*, No. 10-14937, 2012 WL 1068704, at *7 (E.D. Mich. Mar. 29, 2012), *aff'd*, No. 12-1723 (6th Cir. Jan. 8, 2014). However, permanently enjoining a plaintiff against filing additional actions is a "drastic remedy." *Id.* For this reason, "litigiousness alone will not support an injunction against filing future lawsuits." *Austin v. U.S. Postal Serv.*, 758 F.2d 652, 652 (6th Cir. 1985) (unpublished table decision); *see also Burress*, 2012 WL 106874, at *6–7 (declining to issue permanent injunction despite plaintiff initiating 50 appeals in the Sixth Circuit and 23 actions in the Western District of Michigan, many of which were eventually dismissed as frivolous).

In deciding whether to permanently enjoin a litigant from filing new actions, courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expenses to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and

other parties.

*Scott v. Bradford*, No. 13-cv-12781, 2014 WL 6675354, at *4 (E.D. Mich. Nov. 25, 2014). However, the most important factor is whether the plaintiff "is likely to continue to abuse the judicial process and harass other parties." *Id.*

**B. Analysis**

Here, this Court declines to enjoin Pigee from filing future actions at this time. This is the fourth federal case that Pigee has litigated in the Eastern District of Michigan since 2020. ECF. No. 3-4 at PageID.103–104. However, those cases were not dismissed as frivolous. In fact, two of those cases ended in settlements. *See Pigee v. Transworld Sys., Inc.*, 5:23-cv-12682 (E.D. Mich. 2023); *see also Pigee v. Alltran Fin., L.P.*, 2:20-cv-10615 (E.D. Mich. 2020). Based on the outcome of these previous federal actions, Pigee may possess an objective good-faith expectation of prevailing here.

The third case was dismissed earlier this year. *See Pigee v. U.S. Bank Nat'l Ass'n*, 2:25-cv-10246 (E.D. Mich. Apr. 21, 2025). There, Pigee asserted claims against U.S. Bank that are nearly identical to the ones he brings here. But this fact alone does not warrant sanctions. In addition, Pigee originally filed all of his actions in state court—they were each removed by the defendants to this Court. Thus, it is not clear that Pigee has posed an unnecessary burden on this Court. Ultimately, at this time, Pigee's federal litigation history does not amount to "a pattern of filing

repetitive, frivolous, or vexatious cases." E.D. Mich. LR 5.2. However, this Court does not rule out the possibility of a future injunction if Plaintiff's behavior increases to an abusive or harassing level.

## V. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant's Motion to Dismiss and For Sanctions, ECF No. 3, is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that it seeks dismissal of Plaintiff's claims. It is denied as to Chase's request for sanctions.

2. Defendant's Motion to Strike Plaintiff's Response, ECF No. 5, is **DENIED**;

3. Count IV of Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE**. The remaining Counts are **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 30, 2025